**IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA**

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| v. | ) | 1:12CR250-1 |
| | ) | |
| TOMMY EDWARD CLACK | ) | |

**MEMORANDUM OPINION AND ORDER**

A federal grand jury for this district indicted the defendant for loan fraud in violation of 18 U.S.C. § 1014 and three counts of filing false tax returns in violation of 26 U.S.C. § 7206(1). (Docket Entry 1.) Following his arrest in Maryland on a warrant issued in connection with that indictment (see Docket Entry dated Aug. 30, 2013), the case came before the Court for a hearing on a motion for detention by the United States pursuant to 18 U.S.C. § 3142(f)(2), after which the Court took the matter under advisement (see Docket Entry dated Sept. 19, 2013).[1] The Court now enters this written order of detention (as required by 18 U.S.C. §

---

[1] The record does not reflect that the United States ever expressly opposed the defendant's release on the ground that he posed a risk of danger to others or the community; moreover, a significant question exists as to the availability of detention on such a basis under the circumstances presented in this case, see, e.g., United States v. Megahed, 519 F. Supp. 2d 1236, 1245-50 (M.D. Fla. 2007) (acknowledging substantial authority holding "that detention is not available because of the prospective detainee's dangerousness unless the detainee is charged with a felony listed in Section 3142(f)(1) . . . [but concluding that] a systematic review of the statute disproves th[at] premise"); see also 18 U.S.C. § 3142(f)(1) (describing "case[s] that involve" certain characteristics that appear absent here). The Court thus has considered only risk of non-appearance.

3142(i)) because a preponderance of the evidence before the Court establishes that no available conditions of release reasonably would assure the defendant's appearance.

BACKGROUND

A United States Probation Officer in the district of arrest prepared a report regarding the defendant. Both parties had an opportunity to review that report before the hearing. At the hearing, the defendant conceded the accuracy of the report. In addition, the defendant was "afforded an opportunity to testify, to present witnesses, to cross-examine witnesses who appear[ed] at the hearing, and to present information by proffer or otherwise," 18 U.S.C. § 3142(f). In that regard, the United States offered testimony from (and the defendant, through counsel, cross-examined) a federal law enforcement officer who participated in the investigation of the case and the defendant called his wife (his proposed third-party custodian) as a witness.

DISCUSSION

In evaluating the issue of release or detention based on risk of non-appearance, the Court has considered the following statutorily-prescribed factors: "(1) the nature and circumstances of the offense charged . . .; (2) the weight of the evidence against the [defendant]; [and] (3) the history and characteristics of the [defendant] . . . ." 18 U.S.C. § 3142(g). Based on the

record before it, the Court makes the following findings of fact and/or conclusions of law:

1) the offenses charged against the defendant:

A) are serious in nature, including as reflected by the substantial penalties associated with the loan fraud charge in particular, see United States v. Crisp, 454 F.3d 1285, 1290-91 (11th Cir. 2006) (noting that 18 U.S.C. § 1014 "is classified as a Class B felony," qualifying it as "a serious offense"); In re Drexel Burnham Lambert Grp. Inc., 995 F.2d 1138, 1141 (2d Cir. 1993) (describing convictions for "filing false tax returns" as "serious felony charges"); United States v. Melguizo, 824 F.2d 370, 371 (5th Cir. 1987) ("We find that a possible sentence of ten years is also sufficient indication that the offense is serious."); Wilder v. McCabe, Civil Action No. 3:11-187-MBS-JRM, 2012 WL 831488, at *12 (D.S.C. Feb. 21, 2012) (unpublished) (citing and quoting with approval In re Hamer, 537 S.E.2d 552, 553, 342 S.C. 437, 439 (2000), for proposition that "filing false tax returns is a 'serious crime'"); 18 U.S.C. § 1014 (providing for prison term of up to 30 years); and

B) involved (based on the record before the Court) circumstances indicative of a significant risk of non-appearance beyond that associated with the basic elements of the charged offenses, in that the instant offense conduct constituted part of a pattern of fraudulent dealing by the defendant over the course of

many years involving substantial sums, use of aliases and false claims of past or present law enforcement or other governmental affiliations, and aggressive evasion of criminal justice and regulatory processes, see United States v. George, No. CR11-210RAJ, 2011 WL 3047693, at *1-2 (W.D. Wash. July 25, 2011) (unpublished) (ruling that defendant posed non-appearance risk, inter alia, because he had "used multiple aliases" and because "charged offenses demonstrate[d] a protracted scheme . . . to defraud the government"); United States v. Dreier, 596 F. Supp. 2d 831, 832-33 (S.D.N.Y. 2009) (citing record material showing that defendant was "a master of deceit and a doyen of dishonesty" in support of conclusion that "Government ha[d] more than satisfied its burden of proving . . . risk of flight");

    2) the weight of the evidence against the defendant appears quite strong in that the record before the Court reflects that:

        A) the defendant gave a voluntary statement to federal law enforcement officers in which he admitted that, over the three-year reporting period charged in the indictment, he dramatically under-reported the income he derived;

        B) investigation by federal law enforcement officials documented unreported income derived by the defendant over the relevant three-year period resulting in a federal income tax debt of approximately $1,300,000; and

C) documentary evidence shows that, in connection with a loan application, the defendant submitted a purported federal income tax return to a federally-insured financial institution that materially differed from the actual federal income tax return he filed for the year in question; and

3) the history and characteristics of the defendant raise the following concerns regarding risk of non-appearance:

A) the defendant has prior convictions for larceny and obtaining property by false pretenses (in North Carolina in 1996), 22 counts of failing to give notice of right to cancel in connection with off-premises sales (in North Carolina in 2007), three counts of swindling and four counts of false pretenses (in South Carolina in 2012 for conduct that apparently occurred in 2009 and 2010), five counts of acting as a contractor without a license and four counts of selling home improvements without a license (in several jurisdictions in Maryland on several different dates in 2012 for conduct that apparently occurred in 2011), theft (in Florida in 2012 for conduct that apparently occurred in 2011), and four counts of acting as a contractor without a license (in Maryland in 2013 for conduct that apparently occurred in 2011);

B) the defendant's criminal history reflects at least six different failures to appear on state charges in Maryland and North Carolina since 2010;

C) documentary evidence presented by the United States establishes that, since 2010, the defendant repeatedly failed to appear and otherwise violated court orders (resulting in findings of contempt), in connection with state civil/regulatory proceedings commenced to address his use of false and deceptive trade practices to defraud consumers, particularly the elderly; and

D) the defendant came to the attention of federal law enforcement officials in 2008 and 2009 in connection with another investigation in which he agreed to (and apparently did) cooperate, but then immediately resumed his criminal and contemnacious conduct (as confirmed by a number of the above-cited convictions and findings), as well as his defrauding of the United States (in that he failed to file federal income tax returns for the years that followed, despite his continued derivation of substantial income from his fraudulent business operations).

After considering all of the record material in light of the relevant, statutorily-prescribed factors, the Court finds by a preponderance of the evidence that no available combination of release conditions reasonably would assure the defendant's appearance. In this regard, the Court notes, in particular, the serious nature of the offenses charged, the defendant's long-term and recent involvement in fraud from Florida to Maryland, his use of aliases, his numerous failures to appear, and his repeated violation of court orders. Given these circumstances, the Court

concludes that the defendant has the incentive, the willingness, and the ability to abscond (including through the use of aliases to evade discovery and of fraud to finance flight).

Home confinement with electronic monitoring and a third-party custodian would not offset the risk of non-appearance because the defendant simply could disengage any device and then depart for parts unknown (including during any absence from the home by the third-party custodian or while she slept), all before probation officials reasonably could respond to any electronic or human report of his absence. See United States v. Megahed, 519 F. Supp. 2d 1236, 1244 (M.D. Fla. 2007) ("Neither electronic monitoring nor the GPS system of surveillance defeats the resolute, resourceful, energetic, and non-compliant releasee. Even attentive and persistent monitoring by personnel of Pre-trial Services leaves the possibility of some hours' delay in both notifying law enforcement of a releasee's departure and beginning an effective search with the aid of a warrant and other essential aids to investigation and pursuit." (internal citation omitted)).[2] Simply put, "conditions

---

[2] Moreover, after hearing the testimony of the defendant's proposed third-party custodian (and wife) and observing her demeanor, the Court finds that she would not serve as an effective monitor of his actions (including whether he had undertaken preparations to flee). In this regard, the Court notes that, both historically and recently, the defendant has involved his wife in his fraudulent and otherwise deceptive activities. For example, during the detention hearing, the defendant's wife admitted that, at his urging (during a recent telephone call), she deceived his parents to get additional money from them. These circumstances demonstrate that the defendant's wife lacks either the capacity to
(continued...)

-7-

of release depend largely on the [d]efendant's good faith – or lack of it. . . . [W]here, as here, [the] defendant is . . . a thief, a liar, and a false-impersonator, . . . there is an unacceptably high risk that [he] will not comply in good faith nor can he be trusted to comply with proposed conditions, or any other combination of release conditions imposed upon him." United States v. Petersen, 557 F. Supp. 2d 1124, 1131 (E.D. Cal. 2008); see also United States v. Slack, No. IP 99-0138-CR-01 H/F, 2000 WL 1206659, at *5-6 (S.D. Ind. Aug. 17, 2000) (unpublished) ("[T]his court finds no reason to trust [the defendant] to comply with a court order or to fulfill a promise to the court, unless of course [he] happens to find it convenient to do so. . . . Sometimes he appears; sometimes he does not. This factor tends to weigh in favor of finding a serious risk of flight.").

**IT IS THEREFORE ORDERED** that the oral motion for detention by the United States is **GRANTED**. Pursuant to 18 U.S.C. § 3142(e)(1), the defendant is committed to the custody of the United States Attorney General or his designated representative for confinement in a corrections facility separate, to the extent practicable, from

---

[2](...continued)
avoid manipulation by him or the integrity to disassociate herself from such conduct. Either possibility renders her unsuitable for the role of third-party custodian. Nor does the Court deem the defendant's family ties sufficient to mitigate the risk of non-appearance. His wife testified that the defendant repeatedly has failed to meet his obligations to her and their children and the record offers no reason to belief he would flinch from deserting them if such action served his immediate interests.

-8-

persons awaiting or serving sentences or being held in custody pending appeal.  The defendant shall be afforded a reasonable opportunity for private consultation with defense counsel.  On order of a court of the United States or request of an attorney for the Government, the person in charge of the corrections facility shall deliver the defendant to the United States Marshal for the purpose of an appearance in connection with a court proceeding.

                                         /s/ L. Patrick Auld
                                          **L. Patrick Auld**
                                **United States Magistrate Judge**

October 4, 2013